## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **Spriv LLC** | |
| **Plaintiff,** | **Civil Action No. 1:25-cv-00354** |
| **v.** | |
| **Salesforce, Inc.** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

Plaintiff Spriv LLC ("Spriv" or "Plaintiff") brings this Complaint against Defendant Salesforce, Inc. ("Salesforce") for infringement of U.S. Patent Nos. 9,033,225 ("the '225 patent"); 11,354,667 ("the '667 patent"); 11,556,932 ("the '932 patent"); and 12,034,863 ("the '863 patent") (collectively, the "Asserted Patents"). Plaintiff, on personal knowledge of its own acts, and on information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1.  This is a patent infringement suit relating to Defendant's unauthorized and unlicensed use of the Asserted Patents. The authentication technologies claimed in the Asserted Patents are used by Defendant in its multi-factor authentication ("MFA") products and services ("Accused Products"), including but not limited to Salesforce Authenticator.

2.  Spriv brings this action to put a stop to Defendant's unauthorized and unlicensed use of the inventions claimed in the Asserted Patents.

**THE PARTIES**

3.    Plaintiff Spriv is a limited liability company organized under the laws of the State of New York with a place of business at 517 Grand Street, Office A, New York, NY 10002-4326.

4.    Founded in 2007, Spriv is a practicing entity that specializes in fraud prevention and provides a platform for multiple two-factor authentication solutions in one product.

5.    Spriv's founder began working on fraud prevention technologies in late 2005 and began working on the "computer signature" technology underlying the Asserted Patents in late 2006.

6.    Since its formation, Spriv has developed various products and obtained numerous patents on various systems and methods relating to multi-factor authentication, user identity, and fraud prevention.

7.    Spriv's award-winning technology received the Second Runner-Up award for the North America region in the "NAVTEQ 2010 Global LBS Challenge" at Where2.0 in San Jose, CA for its solution for automatic internet authentication, preventing fraudulent use of stolen credit cards and user/password information by tying their use to the owner's mobile phone location.  *See* https://youtu.be/aBs14wRSPdA . The judges included notable technologies companies such as AT&T, Bing, Denso, Intel, Samsung, and Verizon.

8.    Spriv was also recognized as a finalist in the 2011 MRC Emerging Technology (METAwards) by the Merchant Risk Council, a global merchant-led trade association that distributes the METAwards to recognize the most innovative payment, fraud, and security tools in electronic commerce, as judged by a diverse panel of online and multi-channel merchants that included BestBuy.com, eBay, GoDaddy, HP, Microsoft, Tiffany & Co, T-Mobile, and

others.  On information and belief, the MRC technology awards are regarded as one of the most distinguished acknowledgements in the fraud and payments sector.

9.      On information and belief, Salesforce, Inc. is a company incorporated and existing under the laws of Delaware with its principal place of business and headquarters at 415 Mission St., 3rd Floor, San Francisco, CA 94105.

10.      Salesforce has at least one regular and established place of business in this District located at 600 Congress Avenue, Austin TX 78701.

11.      On information and belief, the MFA technology used by Salesforce at issue in this case was originally developed by an Austin-based company called Toopher.  Toopher and its MFA technology were subsequently acquired by Salesforce in a deal announced on Toopher's website on April 1, 2015.

12.      On information and belief, Toopher's technology became the foundation for the relevant functionality of Salesforce Authenticator and has been the exclusive push notification authenticator for Salesforce.com's cloud CRM platform.  The Salesforce Authenticator app was built as the front end to Toopher's complex authentication API.[1]

13.      On information and belief, a number of former Toopher technical personnel who developed the Toopher MFA technology that became Salesforce Authenticator continue to work for Salesforce in its Austin location.

14.      Salesforce has designated, as its registered agent for service of process in Texas, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

---

[1] See https://stackoverflow.blog/2020/11/17/the-complexities-and-rewards-of-open-sourcing-corporate-software-products/ (last accessed Feb. 24, 2025).

15.    On information and belief, Salesforce has sold, offered for sale, used, and/or manufactured in the United States, including in this District, products and/or systems that practice the computer systems and methods of the Asserted Patents.  Additionally, Salesforce has introduced those products and/or systems into the stream of commerce knowing that they will be sold and/or used in this District and elsewhere in the United States.

## JURISDICTION AND VENUE

16.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

17.    This Court has personal jurisdiction over Defendant pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendant has done and continues to do substantial business in Texas and in this judicial district, directly or through intermediaries; and (ii) Defendant has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas.

18.    On information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 with respect to Defendant because Defendant has committed and continues to commit acts of infringement in this District including making, using, offering to sell, and/or selling accused products/services in this district, and/or importing accused products/services into this district, including via Internet sales, and has at least one regular and established place of business in this District located at 600 Congress Avenue, Austin TX 78701.

19.    Salesforce Authenticator is built on a location-based two-factor authentication technology developed by Toopher, a company that Salesforce acquired in April 2015.[2] Toopher was based in Austin, Texas.  On information and belief, a number of employees at Salesforce who previously worked at Toopher continued to work at Salesforce's Austin, TX location.  These include:

- Seth Holloway, a Director of Software Engineering at Salesforce (formerly Head of Developer Experience and Senior Software Developer at Toopher);[3]

- Andrew Shafer, Principal Member of Technical Staff at Salesforce (formerly Head of Engineering at Toopher);[4]

- Evan Grim, most recently a Software Architect at Salesforce through at least August 2022 (formerly founder of and CTO at Toopher);[5]

- Shawn Kim, most recently a Lead Member of Technical Staff at Salesforce through at least August 2020 (formerly Software Developer at Toopher);[6]

- Grace Yim, most recently a Software Engineer at Salesforce through at least November 2018 (formerly Software Developer at Toopher);[7] and

- Josh Alexander, who worked on Product Management and Strategy for Platform at Salesforce through at least February 2022 and Strategy at Salesforce through March 2023 (formerly Co-Founder of and CEO at Toopher).[8]

20.    On information and belief, Salesforce's development of and support for the Salesforce Authenticator product and/or services are the responsibility of the Mobile Identity team within Salesforce.  On information and belief, a significant number of individuals

---

[2] *See* https://admin.salesforce.com/blog/2017/demo-lightning-login-company (last accessed Feb. 24, 2025).
[3] https://www.linkedin.com/in/sethholloway/ (last accessed Feb. 24, 2025).
[4] https://www.linkedin.com/in/drewshafer/ (last accessed Feb. 24, 2025).
[5] https://www.linkedin.com/in/evangrim/ (last accessed Feb. 24, 2025).
[6] https://www.linkedin.com/in/shawnjk/ (last accessed Feb. 24, 2025).
[7] https://www.linkedin.com/in/graceekyim/ (last accessed Feb. 24, 2025).
[8] https://www.linkedin.com/in/joshdalexander/details/experience/ (last accessed Feb. 24, 2025).

associated with the Mobile Identity team work out of the Austin, TX location of Salesforce or are otherwise located within this District.

## U.S. PATENT NO. 9,033,225

21.    Spriv owns by assignment the entire right, title, and interest in the '225 patent, entitled "Method and System for Authenticating Internet Users," which issued on May 19, 2015.

22.    The '225 patent issued to inventor Guy Hefetz from United States Patent Application Ser. No. 14/145,862, filed October December 31, 2013, claiming ultimate priority to U.S. Pat. App. Ser. No. 12/600,808, filed May 29, 2007.  A true and correct copy of the '225 patent is attached as Exhibit A.

23.    The '225 patent is generally related to authenticating an internet user identity for system access and/or performing transactions by use of cross-referencing and comparing at least two independent sources of verifying information relating to a computer signature.

24.    The claims of the '225 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

25.    The claims of the '225 patent are directed to an improvement in computer functionality; they are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself.  The written description of the '225 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.    The '225 patent contains 1 independent claims and 15 total claims, covering a computer-implemented method of authenticating an internet user for access to a website. Claim 1 of the '225 patent reads:

> 1. A computer-implemented method of authenticating an Internet user for access to a website, the user having access to a mobile communication device and being in communication with said website via a computer having a computer signature, the method comprising the computer-implemented steps of:
>
>> (a) receiving the computer signature of the computer while the computer is in communication with the website;
>>
>> (b) requesting a geographical location of the mobile communication device, the geographical location being traced using Wi-Fi;
>>
>> (c) checking if the computer signature is stored in a database; and
>>
>> (d) if the computer signature is not in the database, then attempting to authenticate the computer; and
>>
>> (e) if the authentication is acceptable, assigning, in the database, the geographical location of the mobile communication device requested in step (b) to the computer signature, and continuing the authentication process; or
>>
>> (f) if the computer signature is stored in the database, comparing the geographical location assigned in the database to the computer signature with the geographical location of the mobile communication device requested in step (b), and if the result of the comparison is not within an acceptable distance, then attempting to authenticate the computer, and if the authentication is acceptable then continuing the authentication process.

27.    This claim, as a whole, provides significant benefits and improvements to security and reliability of authenticated website access.

28.    The '225 patent provides a solution necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

29.     The claims of the '225 patent thus recite improvements that, when considered both in terms of their individual elements and as an ordered combination, were not well-understood, routine, or conventional to a skilled artisan at the time of the '225 patent.

## U.S. PATENT NO. 11,354,667

30.     Spriv owns by assignment the entire right, title, and interest in the '667 patent, entitled "Method for Internet User Authentication" which issued on June 7, 2022.

31.     The '667 patent issued to inventor Guy Hefetz from United States Patent Application No. 17/149,776, filed January 15, 2021, claiming ultimate priority to U.S. Patent. App. Ser. No. 12/600,808, filed May 29, 2007.  A true and correct copy of the '667 patent is attached as Exhibit B.

32.     The '667 patent is directed to authenticating an internet user identity for system access and/or performing transactions by use of cross-referencing and comparing at least two independent sources of verifying information relating to a computer signature.

33.     The claims of the '667 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

34.     The claims of the '667 patent are directed to an improvement in computer functionality; they are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself.  The written description of the '667 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

35.   The '667 patent contains 2 independent claims and 18 total claims,

covering computer systems configured to authenticate the identity of a user attempting

to access the system or conduct a transaction.  Claim 1 reads:

> 1. A computer system configured to authenticate the identity of a user who is attempting to access the system or conduct a transaction, the user being associated with a computer signature and being in possession of a mobile phone, the computer system being configured to perform the following steps:
>
>> (A) obtain the geographical location of the mobile phone;
>>
>> (B) determine if the computer signature associated with the user is associated in a database with a stored geographical location;
>>
>> (C) if the computer signature is associated in the database with the stored geographical location, comparing the stored geographical location to the geographical location of the mobile phone obtained at step (A) and proceeding to step (E);
>>
>> (D) if the computer signature is not associated in the database with a stored geographical location, then attempting to authenticate the identity of the user by requiring the user to provide additional authentication information, and only if the identity of the user is authenticated by the additional authentication information, storing, in the database, the computer signature in association with the mobile phone geographical location obtained at step (A), and carrying out at least one of the following actions:
>>
>>> ([i]) allowing the user access and/or the ability to conduct transactions, and ([ii]) assigning to the user a positive score;
>>
>> (E) if step (C) has been taken, and the result of the comparison is a difference in location that is within an acceptable distance, carrying out one or more of the following actions:
>>
>>> ([i]) allowing the user access and/or the ability to conduct transactions; and ([ii]) assigning to the user a positive score;
>>
>> (F) if the result of the comparison is a difference in location that is not within the acceptable distance, then requiring the user to provide additional authentication information, wherein the computer signature comprises at least one software identifier, wherein the geographical location of the mobile phone is identified by at least one method selected from the group consisting of Galileo, GPS,

cellular antenna network, phone antenna, WiFi, Bluetooth, MIMO, UWB, and WiMax.

36.    This claim, as a whole, provides significant benefits and improvements to security and reliability of authenticated website access.

37.    The '667 patent provides a solution necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

38.    The claims of the '667 patent thus recite improvements that, when considered both in terms of their individual elements and as an ordered combination, were not well-understood, routine, or conventional to a skilled artisan at the time of the '667 patent.

## U.S. PATENT NO. 11,556,932

39.    Spriv owns by assignment the entire right, title, and interest in the '932 patent, entitled "System for User Authentication," which issued on January 17, 2023.

40.    The '932 patent issued to inventor Guy Hefetz from United States Patent Application No. 17/834,769, filed June 7, 2022, claiming ultimate priority to U.S. Patent. App. Ser. No. 12/600,808, filed May 29, 2007. A true and correct copy of the '932 patent is attached as Exhibit C.

41.    The '932 patent is related to authenticating an internet user identity for system access and/or performing transactions by use of cross-referencing and comparing at least two independent sources of verifying information relating to a computer signature.

42.    The claims of the '932 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

43.    The claims of the '932 patent are directed to an improvement in computer functionality; they are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent

ineligible concept itself.  The written description of the '932 patent describes in technical detail

each limitation of the claims, allowing a skilled artisan to understand the scope of the claims

and how the nonconventional and non-generic combination of claim limitations is patentably

distinct from and improved upon what may have been considered conventional or generic in the

art at the time of the invention.

44.     The '932 patent contains 1 independent claims and 20 total claims, covering

computer systems configured to authenticate the identity of a user in possession of a cell phone

who is attempting to access a website or conduct a transaction. Claim 1 reads:

> 1.  A computer system configured to authenticate the identity of a user in possession of a cell phone, who is attempting to access a website or conduct a transaction, the computer system being configured to perform the following steps:
>
> a) receiving a computer signature associated with the user;
>
> b) receiving the geographical location of the cell phone;
>
> c) determining if the computer signature is in a database;
>
> d) if the computer signature is in the database, determining if the received geographical location of the cell phone is within an acceptable distance from a saved geographical location of the cell phone, the saved geographical location having been saved in the database in association with the computer signature after successful authentication of the user;
>
> e) if the computer signature is not in the database, then requiring additional authentication information of the user;
>
> f) if the additional authentication information is acceptable, then saving the computer signature in the database, in association with the received cell phone geographical location; and
>
> g) if the saved cell phone geographical location and the received cell phone geographical location are within the acceptable distance, then taking at least one of the following actions:
>
>> (i) allowing the user access to the website;
>> (ii) allowing the user to conduct the transaction; and
>> (iii) assigning a positive score to the user;
>
> wherein the geographical location of the cell phone and the saved geographical location of the cell phone are identified by one or more

of the following: GPS, Wi-Fi, Galileo, cellular antenna network, phone antenna, Bluetooth, MIMO, UWB, and WiMax.

45.    This claim, as a whole, provides significant benefits and improvements to security and reliability of authenticated website access.

46.    The '932 patent provides a solution necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

47.    The claims of the '932 patent thus recite improvements that, when considered both in terms of their individual elements and as an ordered combination, were not well-understood, routine, or conventional to a skilled artisan at the time of the '932 patent.

**U.S. PATENT NO. 12,034,863**

48.    Spriv owns by assignment the entire right, title, and interest in the '863 patent, entitled "Methods of Authenticating the Identity of a Computer" which issued on July 9, 2024.

49.    The '863 patent issued to inventor Guy Hefetz from United States Patent Application No. 18/479,062, filed September 30, 2023, claiming ultimate priority to U.S. Patent. App. Ser. No. 12/600,808, filed May 29, 2007.  A true and correct copy of the '863 patent is attached as Exhibit D.

50.    The '863 patent is related to authenticating an internet user identity for system access and/or performing transactions by use of cross-referencing and comparing at least two independent sources of verifying information relating to the computer signature.

51.    The '863 patent contains 2 independent claims and 30 total claims, covering particular methods of authenticating a user prior to allowing a transaction or access to a website, in which the user's computer is identified via a recognized computer signature associated with a geographical location.

52.    The claims of the '863 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

53.    The claims of the '863 patent are directed to an improvement in computer functionality; they are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself.  The written description of the '863 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.    Claim 1 reads:

1.  A method for authenticating a user's transaction or access to a website, the user's initiation of the transaction or access being associated with a computer signature, comprising the steps of:

receiving a geographical location of a mobile phone, wherein the mobile phone is associated with the user and wherein the geographical location of the mobile phone is identified by at least one of: GPS, Wi-Fi, Galileo, cellular antenna network, Bluetooth, MIMO, UWB, and WiMax;

determining if the received geographical location of the mobile phone is within an allowed distance of a geographical location associated with the computer signature;

determining if the computer signature is a known computer signature; and

if the computer signature is not a known computer signature, taking at least one of the following actions:

(i) allocating a negative security score and

(ii) requiring additional authentication information from the user;

or if the computer signature is a known computer signature, and if the received geographical location of the mobile phone is within the acceptable distance, taking at least one of the following actions:

(i) allowing the user access to the website;

(ii) allowing the user to conduct the transaction; and

(iii) allocating a positive score to the user;

wherein a signature is known if it is found in a database containing previously-identified signatures.

55.    This claim, as a whole, provides significant benefits and improvements to security and reliability of authenticated website and transaction access.

56.    The '863 patent provides a solution necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

57.    The claims of the '863 patent thus recite improvements that, when considered both in terms of their individual elements and as an ordered combination, were not well-understood, routine, or conventional to a skilled artisan at the time of the '863 patent.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,033,225**

58.    Spriv re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

59.    The '225 patent is valid and enforceable under the United States patent laws.

60.    Spriv owns, by assignment, all right, title, and interest in and to the '225 patent, including the right to collect for past damages.

61.    On information and belief, Defendant has infringed and continues infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a), one or more claims of the '225 patent by making, using, offering to sell, and/or selling within the United States, or importing into the United States, products and/or services that practice the methods of the '225 patent, including as a non-limiting illustrative example Salesforce Authenticator.

62.    A claim chart demonstrating Defendant's infringement of the '225 patent is attached hereto as Exhibit E.

63.    Defendant's Accused Products infringed and continue to infringe, one or more claims of the '225 patent during the pendency of the '225 patent.

64.    At least of the date of the filing of this Complaint, Defendant's infringement of the '225 patent has been, and continues to be, done with knowledge of the '225 patent and with knowledge of Spriv's contention that Defendant has been and is continuing to infringe the '225 patent.

65.    Defendant's infringement of the '225 patent is exceptional and entitles Spriv to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

66.    Defendant's direct infringement of the '225 patent has damaged Spriv by violating Spriv's right to exclude others from using, selling, and offering to sell products and services that practice the '225 patent in the United States.

67.    Spriv has been damaged by Defendant's infringement of the '225 patent and will continue to be damaged unless Defendant is enjoined by this Court. Spriv has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Spriv, and public interest is not disserved by an injunction.

68.    Spriv is entitled to recover from Defendant all damages that Spriv has sustained as a result of Defendant's infringement of the '225 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,354,667

69.    Spriv re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

70.    The '667 patent is valid and enforceable under the United States patent laws.

71.    Spriv owns, by assignment, all right, title, and interest in and to the '667 patent, including the right to collect for past damages.

72.    On information and belief, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) one or more claims of the '667 patent by making, using, offering to sell, and/or selling within the United States, or importing into the United States, computer systems that practice the claims of the '667 patent, including as a non-limiting illustrative example Salesforce Authenticator.

73.    An exemplary claim chart demonstrating Defendant's infringement of the '667 patent by Salesforce Authenticator is attached hereto as Exhibit F.

74.    Defendant's Accused Products infringed and continue to infringe one or more claims of the '667 patent during the pendency of the '667 patent.

75.    At least of the date of the filing of this Complaint, Defendant's infringement of the '667 patent was, and continues to be, done with knowledge of the '667 patent and with knowledge of Spriv's contention that Defendant is infringing the '667 patent.

76.    Defendant's infringement of the '667 patent is exceptional and entitles Spriv to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

77.    Defendant's direct infringement of the '667 patent has damaged Spriv by violating Spriv's right to exclude others from using, selling, and offering to sell products and services that practice the '667 patent in the United States.

78.    Spriv has been damaged by Defendant's infringement of the '667 patent and will continue to be damaged unless Defendant is enjoined by this Court. Spriv has suffered and

continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Spriv, and public interest is not disserved by an injunction.

79.     Spriv is entitled to recover from Defendant all damages that Spriv has sustained as a result of Defendant's infringement of the '667 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,556,932

80.     Spriv re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

81.     The '932 patent is valid and enforceable under the United States patent laws.

82.     Spriv owns, by assignment, all right, title, and interest in and to the '932 patent, including the right to collect for past damages.

83.     On information and belief, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) one or more claims of the '932 patent by making, using, offering to sell, and/or selling within the United States, or importing into the United States, computer systems that practice the claims of the '932 patent, including as one example Salesforce Authenticator.

84.     An exemplary claim chart demonstrating Defendant's infringement of the '932 patent by Salesforce Authenticator is attached hereto as Exhibit G.

85.     Defendant's Accused Products infringed and continue to infringe one or more claims of the '932 patent during the pendency of the '932 patent.

86.     At least of the date of the filing of this Complaint, Defendant's infringement of the '932 patent was, and continues to be, done with knowledge of the '932 patent and with knowledge of Spriv's contention that at Salesforce has been and is infringing the '932 patent.

87.    Defendant's infringement of the '932 patent is exceptional and entitles Spriv to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

88.    Defendant's direct infringement of the '932 patent has damaged Spriv by violating Spriv's right to exclude others from using, selling, and offering to sell products and services that practice the '932 patent in the United States.

89.    Spriv has been damaged by Defendant's infringement of the '932 patent and will continue to be damaged unless Defendant is enjoined by this Court. Spriv has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  The balance of hardships favors Spriv, and public interest is not disserved by an injunction.

90.    Spriv is entitled to recover from Defendant all damages that Spriv has sustained as a result of Defendant's infringement of the '932 patent, including without limitation and/or not less than a reasonable royalty.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 12,034,863

91.    Spriv re-alleges and incorporates by reference the allegations of the foregoing paragraphs as if fully set forth herein.

92.    The '863 patent is valid and enforceable under the United States patent laws.

93.    Spriv owns, by assignment, all right, title, and interest in and to the '863 patent, including the right to collect for past damages.

94.    On information and belief, Salesforce has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) one or more claims of the '863 patent by making, using, offering to sell, and/or selling within the United States, or importing into the United States, computer systems that practice the claims of the '863 patent, including as one non-limiting example Salesforce Authenticator.

95.    An exemplary claim chart demonstrating Defendant's infringement of the '863 patent by Salesforce Authenticator is attached hereto as Exhibit H.

96.    Defendant's Accused Products infringed and continue to infringe one or more claims of the '863 patent during the pendency of the '863 patent.

97.    At least of the date of the filing of this Complaint, Defendant's infringement of the '863 patent was, and continues to be, done with knowledge of the '863 patent and with knowledge of Spriv's contention that Salesforce has been and is infringing the '863 patent.

98.    Defendant's infringement of the '863 patent is exceptional and entitles Spriv to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

99.    Defendant's direct infringement of the '863 patent has damaged Spriv by violating Spriv's right to exclude others from using, selling, and offering to sell products and services that practice the '863 patent in the United States.

100.    Spriv has been damaged by Defendant's infringement of the '863 patent and will continue to be damaged unless Defendant is enjoined by this Court. Spriv has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Spriv, and public interest is not disserved by an injunction.

101.    Spriv is entitled to recover from Defendant all damages that Spriv has sustained as a result of Defendant's infringement of the '863 patent, including without limitation and/or not less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Spriv respectfully requests that this Court enter judgment in its favor as follows and award Spriv the following relief:

a.   a judgment declaring that Defendant has infringed one or more claims of each of the Asserted Patents in this litigation pursuant to 35 U.S.C. § 271, *et seq.*;

b.   an award of damages adequate to compensate Spriv for infringement of each of the Asserted Patents by Defendant, in an amount to be proven at trial, including supplemental post-verdict damages until such time as Defendant ceases its infringing conduct;

c.   a permanent injunction, pursuant to 35 U.S.C. § 283, prohibiting Defendant and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all affiliated entities, and all others acting in privity with Defendant, from committing further acts of infringement;

d.   a judgment requiring Defendant to make an accounting of damages resulting from its infringement of the respective Asserted Patents;

e.   enhanced damages for willful infringement;

f.   the costs of this action, as well as attorneys' fees as provided by 35 U.S.C. § 285;

g.   pre-judgment and post-judgment interest at the maximum amount permitted by law;

h.   all other relief, in law or equity, to which Spriv is entitled.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: March 10, 2025

*/s/ Robert Kiddie*
Robert Kiddie (TX Bar No. 24060092)
**DEVLIN LAW FIRM LLC**
1529 Gilpin Ave.
Wilmington, DE 19806
Telephone: (302) 449–9010
Facsimile: (302) 353–4251
rkiddie@devlinlawfirm.com
*Attorney for Plaintiff Spriv LLC*